RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4/8/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JACQUELYN WHITSITT and BRIAN WHITSITT | CIVIL ACTION 08-414 (LEAD) 09-1662 (MEMBER) |
| VERSUS | JUDGE HAIK |
| UNITED STATES OF AMERICA, et al | MAGISTRATE JUDGE HILL |

## AMENDED REASONS FOR JUDGMENT

A Trial was held in the above captioned matter beginning on January 24, 2011. Upon a full review of the record, all pleadings and exhibits, trial testimony, and the applicable law, the Court finds for the plaintiffs, Jacquelyn and Brian Whitsitt and against the defendants, the United States of America and Dr. Ronald Tolls.

### FACTUAL BACKGROUND AND FINDINGS OF FACT

On September 24, 2005, Jacquelyn Whitsitt arrived at the emergency room of the Bayne-Jones Army Community Hospital with abdominal pain radiating to her back, nausea, and vomiting. She was initially diagnosed by the emergency room physician with pancreatitis and gallstones. Mrs. Whitsitt had a history of pancreatitis. The emergency room physician, Dr. Gerald Halonen, consulted with Dr. Ronald Tolls about the possibility of future surgery. Upon admission, Dr. Ronald Tolls became Mrs. Whitsitt's treating physician. Mrs. Whitsitt's condition continued to decline through September 25, 2005. Dr. Tolls determined, incorrectly, that Mrs. Whitsitt was suffering from acute cholecystitis and performed a laparoscopic cholecystectomy on September 26, 2005. The surgery was performed while she was in poor

clinical condition. During the surgery, her bile duct was nicked and the contents of Mrs. Whitsitt's gallbladder were spilled into her abdominal cavity. Post surgery, the pathology report showed only mild cholecystitis and cholesterolosis, confirming the misdiagnosis.

Following surgery and the removal of the percutaneous drain, Mrs. Whitsitt's condition continued to fail. She appeared to be bloated, was tachycardic, and there was yellow-green discharge from the drain site. Her serum calcium levels fell to an abnormally low level, and her ionized calcium fell to about 60% of the normal lower limit. The defendants' expert witness, Dr. Andrew Warshaw, admitted these were "serious" signs of "severe pancreatitis" which Dr. Tolls failed to recognize. Mrs. Whitsitt was admitted to the ICU after suffering respitory failure and requiring intubation. Further, it is reported that she had to be revived after "coding". She endured a second surgery on September 28, 2005, as Dr. Tolls attempted to discover the cause of her condition. Although, Mrs. Whitsitt was suffering from advanced pancreatitis at that point, Dr. Tolls only saw a pinpoint bile leak as a potential source of her problems. He admitted, however, to seeing brown murky fluid in her abdominal cavity, which should have alerted him to the presence of necrotizing pancreatitis, according to the evidence. The Court finds that, during her stay at Bayne-Jones Army Community Hospital, Mrs. Whitsitt was not given appropriate supportive care for pancreatitis, such as aggressive fluid resuscitation, proper vital sign maintenance for her condition, and the cessation of food by mouth, which are recognized as proper treatment and protocol for her condition. The testimony of the plaintiffs' expert, Dr. John McMillan, coupled with the medical literature presented, support this finding. Mrs. Whitsitt was also misdiagnosed with severe cholecystits, rather than pancreatitis, and underwent a surgical procedure during an acute attack of pancreatitis. The evidence presented overwhelmingly supports the conclusion that any non-emergency surgical procedures should have been performed

only after the pancreatitis had subsided and the patient was clinically stable.

By September 29, 2005, the deterioration of her condition resulted in a transfer to Byrd Memorial Hospital. As her condition worsened, she was eventually re-intubated. At some point during one of the episodes of intubation, her vocal cords were injured. Subsequent to the transfer, she was properly diagnosed with severe, necrotizing pancreatitis and treated at Byrd Memorial Hospital, but not before suffering damage from what this Court concludes was substandard medical care by Dr. Tolls. Mrs. Whitsitt ultimately spent approximately one month in the hospital and endured various complications from her treatment. She developed a pseudocyst of the pancreas and underwent several months of treatment, including self-administered injections, to reduce it before having yet another procedure to drain it on August 11, 2006. In addition to the foregoing, the Court finds she also suffered permanent damage to her pancreas (necrotyzing pancreas), several abdominal surgeries, vocal cord surgery and treatment, a post operative ileus, chemical periontitis, bile peritonitis, sepsis, hypocalcemia, anemia, a bile leak, tachycardia, tachypnia, acidosis, hypoglycemia, liver problems, hyperlipidemia, Type II diabetes from the loss of production of insulin, and the failure to produce digestive enzymes which requires her to swallow 12 pills per day in order to eat food as a result of the defendants' negligence.

Although the defendants presented evidence that, despite the misdiagnosis, the plaintiff received appropriate treatment for her actual condition and suffered no complications or worsening of her pancreatits as a result of the actions and/or inactions of Dr. Tolls, this Court finds those assertions carry little weight in light of the overwhelming evidence presented by the plaintiffs in this matter. The uncontested evidence shows that, with proper supportive measures, the great majority of pancreatitis cases resolve themselves. The testimony of Dr. McMillan, as

supported by medical literature, and the medical records in this case show that Mrs. Whitsitt was not properly treated for pancreatitis and underwent surgical procedures which were improper given her condition. Such action and inaction resulted in a degree of care which fell below that ordinarily practiced by doctors in Dr. Tolls position. Her condition worsened dramatically and she suffered long reaching complications which this Court finds are a direct result of the substandard medical care received by the plaintiff from the defendants.

The Court further finds that the evidence presented does not support a finding that Mrs. Whitsitt's Dyspareunia is related to her pancreatitis or any related events including the medical care she received at Bayne Jones and Byrd Memorial Hospital. Consequently, any claim for damages related to Dyspareunia are hereby **DISMISSED.**

## CONCLUSIONS OF LAW

The Whitsitts filed this malpractice claim against a United States Employee, Dr. Ronald Tolls. The claims, therefore, fall under the Federal Torts Claims Act, 28 USCA section 2671, which applies the law of the jurisdiction in which the claim is brought. As such, the Louisiana Medical Malpractice Act applies to this matter, capping any general damages awarded at $500,000. Further, the Federal Tort Claims Act provides that the "United States shall be liable, respecting the provisions of this title relating to tort claim, in the same manner and to the same extent as a private individual under like circumstances..." 18 USCA sction 2674.

In medical malpractice actions brought in the State of Louisiana, a plaintiff must prove the following:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
>
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

In order to prevail on a medical malpractice claim, the plaintiff must prove that the doctor's treatment fell below the standard of care expected of a physician in his medical specialty, and a causal relationship between the alleged negligent treatment and the injuries sustained. *Smith v. Clement*, 797 So.2d. 151 (LA App. 3 Cir. 10/3/01). The plaintiffs in this matter have carried their burden. The evidence, including the testimony of the plaintiffs' expert, shows that supportive care, including fluid resuccitation, the cessation of nutrition by mouth, vital sign monitoring, and pain management is the normal course of treatment for pancreatitis. Further, the evidence overwhelmingly proves that any non-emergency surgical procedures should not be performed until the patient's episode of pancreatitis has subsided and the patient is stable. Mrs. Whitsitt's pancreatitis had not subsided and she was not stable when Dr. Tolls misdiagnosed her

with acute cholecystitis and performed a laparoscopic cholecystectomy.

It is undisputed that Mrs. Whitsitt was misdiagnosed and, consequently, was subjected to a poorly timed initial surgery. The defendants' expert, Dr. Andrew Warshaw noted in his report, "Because the real diagnosis was the unappreciated severe pancreatitis, one could argue that the cholecystectomy should not have been performed until the pancreatitis subsided inasmuch as the operation would not be expected to be beneficial and could be excessively dangerous in the presence of severe pancreatitis". Mrs. Whitsitt presented in the emergency room of Bayne Jones Army Community Hospital with a history of pancreatitis and classic symptoms of pancreatitis. She was initially diagnosed by the ER doctor with pancreatitis. To unilaterally determine that she was suffering from acute cholecystitis and to perform the cholecystectomy was, under the circumstances, negligence and medical care which fell below the standard of care expected by a doctor in Dr. Tolls position.

Further, during the surgery, Mrs. Whitsitt's bile duct was nicked and the contents of her gallbladder were spilled into her abdomen. Although the operative notes state the stones that fell out were recovered, later imaging studies showed that some remained. Additionally, after she continued to decline and was transferred to the ICU with bloating, tachycardia, discharge from the drain site, and severely low calcium levels–serious signs of severe pancreatitis–Dr. Tolls further failed to recognize the pancreatitis. Rather, he subjected Mrs. Whitsitt to a second, exploratory surgery. During this surgery, brown murky fluid was found in her abdomen which "should have alerted the operating surgeons to the presence of necrotizing pancreatitis" according

to Dr. Warshaw. However, the pancreatitis was, again, missed. During this entire ordeal, the treatment being given to Mrs. Whitsitt was contrary to that which is the normal protocol for a patient with pancreatitis. As noted in the Findings of Fact, various consequences for Mrs. Whitsitt led from these negligent actions and inactions on the part of the defendants and the Court finds her injuries were a direct result of the substandard care she received.

The evidence of damages in this case support an award to Mrs. Whitsitt in the amount of $1,000,000. Mrs. Whitsitt continues to suffer from the effects of the negligent medical care she received and will do so for the remainder of her life. Brian Whitsitt, the patient's husband, has asserted a claim for loss of consortium, including a loss of society, sex, services, and support from his wife. He testified as to the changes in their lifestyle and marriage as a result of Mrs. Whitsitt's ordeal, as well as the emotional and physical toll it has taken on him. The evidence supports an award of damages to Mr. Whitsitt in the amount of $100,000. The statutory cap in the Louisiana Medical Malpractice Act require these awards to be combined and reduced to $500,000. **As such, the Court hereby finds in favor of the plaintiffs in the amount of $1,100,000, subject to the $500,000 liability cap as required by law.**

An award for past and future medical expenses, normally awarded under Louisiana law, is not applicable in this matter as the plaintiff is covered by a government funded insurance plan, TriCare. Documentation presented shows that the only expenses incurred by the Whitsitts was the amount of **$842.14.** Mrs. Whitsitt's TriCare coverage will provide benefits for any future claims related to her pancreatitis, should any arise. **The plaintiffs are further awarded out-of-**

pocket expenses in the amount of $842.14.

Finally, pursuant to the a stipulation, the plaintiff is awarded **$4,158.00 in past lost wages, which is included in the $500,000 statutory cap.**

<u>TOTAL AWARD</u>:   General Damages, subject to the liability cap–$500,000.00
Out of Pocket Expenses–$842.14
_____
$500, 842.14 to Plaintiffs

THUS DONE and SIGNED on this 8th day of April, 2011.

_____
RICHARD T. HAIK, SR., District Judge
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA